**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JANICE HOLTZ, ) | CASE NO. 1:12-CV-2885 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | VECCHIARELLI |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendant. | |

Plaintiff, Janice Holtz ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security[1] ("Commissioner"), denying her application Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423. This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I. PROCEDURAL HISTORY

On July 5, 2006, Plaintiff filed her application for POD and DIB, alleging a disability onset date of November 3, 2005. (Transcript ("Tr.") 11.) The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.*) In October 2009, after a hearing, an ALJ denied

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. She is automatically substituted as the defendant in this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

her claim. (*Id*.) Plaintiff sought review by the Appeals Council, which granted her request on January 26, 2011 and vacated the October 2009 ALJ decision. (*Id*.) The Appeals Council remanded Plaintiff's claim to a different ALJ for additional proceedings. (*Id*.) On August 22, 2011, ALJ Edmund Round conducted an administrative hearing, at which Plaintiff testified and was represented by counsel. (*Id*.) A vocational expert ("VE") also testified. (*Id*.) On September 15, 2011, ALJ Round found Plaintiff not disabled. (Tr. 11-25.) On October 25, 2012, the Appeals Council declined to review ALJ Round's decision, which became the Commissioner's final decision. (Tr.1.)

On November 20, 2012, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this matter. (Doc. Nos. 15, 16.) Plaintiff argues that substantial evidence does not support the ALJ's decision because the ALJ: (1) erred in finding that Plaintiff's pulmonary condition was insufficient to satisfy Listing 3.03 of the Listings of Impairments ("the Listings"); (2) failed to adequately evaluate the effect of Plaintiff's breathing difficulties on her residual functional capacity ("RFC"); and (3) erred in assessing the opinion of an examining agency consultant.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born on May 5, 1956. (Tr. 194.) She completed high school. (Tr. 24.) Plaintiff had past relevant work as a production assembler, nursery school attendant, general clerk and driver. (Tr. 23.)

### B. Medical Evidence

The ALJ concluded that, during the relevant period of time, Plaintiff had the severe impairments of degenerative disc disease of the lumbar and cervical spines, asthma and major depression. (Tr. 14.) Plaintiff challenges the ALJ's conclusion that her asthma did not satisfy Listing 3.02, his evaluation of her breathing difficulties' effect on her RFC, and his assessment of the opinion of a consulting psychologist. (Plaintiff's Brief ("Pl. Br.") 1, 7-12.) Accordingly, this Memorandum Opinion and Order discusses only the medical evidence relevant to those claims.

#### 1. Treating Providers

On April 28, 2007, Mark A. Maloney, M.D., completed a medical questionnaire, in which he noted having first examined Plaintiff on January 14, 2002 and having most recently examined Plaintiff on March 10, 2006. (Tr. 434.) Dr. Maloney indicated that he had diagnosed Plaintiff with asthma, and that the symptoms of her condition were cough and wheezing. (*Id.*) Dr. Maloney reported that Plaintiff had "significantly low" peak flow measurements, ranging from 49% (200 out of an expected 405) on February 2, 2006 to 67% (270 out of an expected 405) on March 10, 2006. (*Id.*) Dr. Maloney indicated that he had treated Plaintiff with Xopenex, Singulair, and Albuterol. (Tr. 435.)

3

### 2. Agency Reports and Assessments

On November 28, 2006, agency consulting psychologist Mitchell Wax, Ph.D., examined Plaintiff. (Tr. 397-401.) Dr. Wax noted that Plaintiff was "pleasant" and "related well" during the examination. (Tr. 398.) Dr. Wax reported that Plaintiff "at times made too many jokes about her serious problems," and that Plaintiff "appears to manage her depression by making jokes." (*Id*.) Dr. Wax observed that Plaintiff's speech was pressured and slow, and that "what she said was goal oriented." (*Id*.) Plaintiff's coherence was good, with well-organized associations, and Dr. Wax noted "no poverty of speech or perseveration." (*Id*.) Plaintiff reported problems with fidgeting, and fidgeted during the examination. (*Id*.) Dr. Wax observed that Plaintiff displayed agitated psychomotor activity, with minor rocking. (*Id*.) Plaintiff described feeling helpless, hopeless and worthless. (*Id*.)

Plaintiff reported difficultly concentrating, but Dr. Wax noted that she was able to focus during his examination. (Tr. 399.) Plaintiff described her usual mood as anxious and depressed. (*Id*.) Dr. Wax opined that Plaintiff did not have sufficient judgment to make important decisions concerning her future and relied upon her husband to do so. (*Id*.) Plaintiff reported that she enjoyed working in her garden and painting knickknacks. (Tr. 400.) She spoke daily with her sister-in-law, and to her brother and another sister-in-law less frequently. (*Id*.)

Dr. Wax opined that Plaintiff's ability to relate to others was markedly impaired by her depression, and that she was moderately impaired in her ability to maintain attention, concentration and persistence, and to withstand the stresses and pressures

4

associated with work activity. (Tr. 400-01) He assigned her no limitation with respect to her ability to understand, remember and follow instructions. (Tr. 401.) Dr. Wax diagnosed Plaintiff with major depression and assigned her a Global Assessment of Functioning ("GAF") score of 41. (*Id.*)

On December 8, 2006, agency consulting psychologist Caroline Lewin, Ph.D., performed a mental RFC assessment and a psychiatric review technique. (Tr. 403-06, 407-19.) Dr. Lewin opined that Plaintiff was moderately limited in her ability to: understand and remember detailed instructions; carry out detailed instructions; complete a normal workday and workweek without interruptions from pscyhologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work setting. (Tr. 403-04.) Dr. Lewin reviewed Dr. Wax's findings and determined that they were consistent with the medical evidence of record, but noted that Plaintiff was capable of: understanding and carrying out one and two step instructions; concentrating well enough to complete less-demanding tasks; superficially interacting with the public; handling minor deviations from routine job duties; and cooperating with others. (Tr. 405.) Dr. Lewin assigned Plaintiff a moderate limitation in maintaining social functioning, and mild limitations in activities of daily living, and maintaining concentration, persistence and pace. (Tr. 417.)

On August 13, 2009, agency consulting physician, Franklin D. Krause, M.D., examined Plaintiff. (Tr. 463-81.) He noted her complaint of shortness of breath, and that she smoked a pack of cigarettes per day. (Tr. 463.) Plaintiff reported that she experienced dyspnea while walking, climbing stairs, getting dressed and running a

5

vacuum, as well as wheezing and chest tightness. (*Id*.) Dr. Krause noted that Plaintiff's oxygen saturation was 91% on room air, and diagnosed Plaintiff with severe obstructive pulmonary disease. (Tr. 464.) Dr. Krause concluded that Plaintiff could: occasionally lift and carry up to 20 pounds; never lift more than 20 pounds; sit, stand and walk for eight uninterrupted minutes and for a total of six hours in an eight-hour workday; never climb stairs, ramps, ladders or scaffolds; never crawl; frequently balance, stoop, kneel and crouch; and occasionally tolerate unprotected heights, moving mechanical parts, operating a motor vehicle, and vibrations. (Tr. 465-69.) Dr. Krause opined that Plaintiff could never tolerate humidity and wetness; dust, odors, fumes and pulmonary irritants; extreme cold; or extreme heat. (Tr. 469.)

A handwritten notation in Dr. Krause's records reflects that Plaintiff was 63 and one-quarter inches tall. (Tr. 478) A computer printout of Plaintiff's pulmonary function studies listed her height as 63 inches. (Tr. 479.) The pulmonary function studies revealed that the highest 1-second Forced Vital Capacity ("$FEV_1$") level achieved by Plaintiff, after using a bronchodilator, was 1.21. (*Id*.)

**C.     Hearing Testimony**

    **1.     Plaintiff's Hearing Testimony**

At her August 22, 2011 administrative hearing, Plaintiff testified as follows:

She lost her breath while climbing stairs, and was winded by the time she got to the end of her driveway, which she estimated was 20 feet long. (Tr. 52.) Plaintiff was smoking 10 to 15 cigarettes per day, down from two packs per day a couple of years prior. (Tr. 53-54.) Her breathing difficulties were exacerbated by heat, cleaners,

6

cologne, and other strong odors, as well as when she was "too emotional." (Tr. 59.) Although Plaintiff was depressed, she had not sought treatment for that condition. (Tr. 61-62.)

### 2. Vocational Expert's Hearing Testimony

The ALJ described the following hypothetical individual of Plaintiff's age, work and educational history:

> [C]an do a range of light work . . . could sit, stand, or walk for six hours during an eight-hour day; lift, carry, push or pull 10 pounds frequently, 20 pounds occasionally. . . . [M]ust avoid concentrated exposure to fumes, odors, dust, gases, and poorly ventilated areas; and is . . . also limited to simple, routine, low-stress tasks where there is no requirement for arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety of others.

(Tr. 68.) The ALJ testified that the hypothetical individual could not perform any of Plaintiff's past work, but opined that the hypothetical could perform work as a photocopying machine operator, office helper, or mail clerk. (Tr. 68-70.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled

by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. Plaintiff met the insured status requirements of the Act on November 3, 2005, her alleged onset of disability, and she continued to meet those requirements through March 31, 2009, but not thereafter.

2. Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of November 3, 2005 through her date last insured of March

8

      31, 2009.

3. Through the date last insured, Plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spines, asthmas and major depression.

4. Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. Through the date last insured, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations: Plaintiff can sit, stand and walk six hours in an eight-hour workday; lift, carry, push and pull 10 pounds frequently and 20 pounds occasionally. Plaintiff must avoid concentrated exposure to fumes, odors, dust, gases and poorly ventilated areas. She was restricted to simple, routine, low stress tasks where there were no requirements for arbitration, negotiation, confrontation, directing the work of others or being responsible for the safety of others.

6. Through the date last insured, Plaintiff was unable to perform any past relevant work.

7. Plaintiff was born on May 5, 1956 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date last insured.

8. Plaintiff has at least a high school education and she is able to communicate in English.

\* \* \*

10. Through the date last insured, considering Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.

11. Plaintiff was not under a disability, as defined in the Act, at any time from November 3, 2005, the alleged onset date, through March 31, 2009, the date last insured.

(Tr. 13-25).

9

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

Plaintiff argues that substantial evidence does not support the ALJ's decision in

this case because the ALJ erred in: (1) finding that Plaintiff's pulmonary condition did not satisfy Listing 3.02(A); (2) inadequately evaluating the effect of Plaintiff's reduced peak flow values on her RFC; and (3) rejecting portions of the opinion of Dr. Wax.  This Court considers each of these arguments in turn.

**1.     Listing 3.03(A)**

Listing 3.03 sets forth the requirements for a finding of disability based on asthma.  20 C.F.R. Part 404, Subpt. 4, App. 1 at 3.03.  Subsection A of Listing 3.03 requires an ALJ to "[e]valuate [a claimant's asthma] under the criteria for chronic obstructive pulmonary disease in 3.02(A)."  *Id*.  Read in reference to Listing 3.02(A), Listing 3.03(A) provides that an individual may be disabled on the basis of asthma when that individual's $FEV_1$ level is equal to or less than the value specified in Listing 3.02(A) for that individual's height.  *Id*.  The values relevant to this case are as follows:

| Height (Centimeters) | Height (Inches) | $FEV_1$ Equal or Less Than |
|---|---|---|
| 155-160 | 61-63 | 1.15 |
| 161-165 | 64-65 | 1.25 |

*Id*.

Here, the ALJ acknowledged that had achieved an $FEV_1$ value of 1.21, but determined that the level was not sufficiently low to satisfy the Listing:

> In regards to [Plaintiff's] asthma, she . . . has not presented evidence which establishes that she has had chronic pulmonary insufficiency due to chronic asthmatic bronchitis with a $FEV_1$ value in table I of Section 3.02(A) as required by Section 3.03(A) of the listed impairments during the period from her alleged onset date through her date last insured.  In the instant case, the only pulmonary function or spirometry studies . . . were on August 13, 2009, well after [Plaintiff's] date last insured.  These studies indicate that her $FEV_1$ of

11

> 1.21, after bronchodilator, exceed the requirements of this specific table ($FEV_1$ of 1.15 or less) for [Plaintiff's] height (63 inches).

(Tr. 16.)

Plaintiff argues that substantial evidence does not support the ALJ's conclusion on this point because the ALJ erred in applying the table values to Plaintiff's condition. Specifically, Plaintiff contends that she is 63.25 inches tall, and notes that her height, after converting to centimeters from inches, is 160.655 centimeters.[2] According to Plaintiff, because her height in centimeters is closer to 161 than to 160, the ALJ should have rounded up, and applied the $FEV_1$ value for 161 centimeters. Had the ALJ considered Plaintiff's condition as if she were 161 centimeters tall, the Listing would have required a finding of disability because Plaintiff's $FEV_1$ value of 1.21 was less than 1.25, the $FEV_1$ value applicable to someone 161 centimeters tall.[3] The Commissioner responds that Plaintiff's argument fails because there is no authority that requires the ALJ to round up in this situation.[4]

---

[2]   There is no dispute that one inch is equivalent to 2.54 centimeters.

[3]   Plaintiff does not address the fact that, considering Plaintiff's height in inches, 63.25 is closer to 63 than to 64, and, thus, even with her height appropriately rounded, Plaintiff would not have satisfied the required $FEV_1$ level.

[4]   The Commissioner also argues that Plaintiff cannot rely on the pulmonary function tests to prove disability because the testing occurred after the expiration of her date last insured. The Commissioner relies on a decision from the Tenth Circuit to support this argument. However, the Sixth Circuit has determined that, while medical evidence is relevant to prove a disability only while a claimant is insured, *Estep v. Weinberger*, 525 F.2d 757, 757-58 (6th Cir. 1975), medical evidence that postdates a claimant's insured status date may, and ought to be, considered insofar as it bears on the claimant's condition prior to the expiration of insured status, *Begley*

12

Neither party points to any legal authority addressing whether, in this context, an ALJ must convert a claimant's height from inches to centimeters, or whether an ALJ must always round up or down where a claimant's height is between two ranges on the relevant table. The Listings themselves provide no guidance. The relevant table includes measurements in both inches and centimeters. Section 3.00(E) notes only that "[t]he pulmonary function tables in 3.02 . . . are based on measurement of standing height without shoes." 20 C.F.R. Part 404, Subpt. P, App. 1 at 3.00(E). No other court has addressed this specific issue.

This Court need not resolve this question, however, as substantial evidence supports the ALJ's decision to assess Plaintiff's asthma as if she were 63 inches tall. Although a handwritten notation in the medical record indicates that Plaintiff is 63.25 inches tall (Tr. 478), the computer printout of Plaintiff's pulmonary function studies lists her height as 63 inches (Tr. 479). Accordingly, although there is evidence in the record to support Plaintiff's claim that she is 63.25 inches tall, there is also evidence in the record that Plaintiff is 63 inches tall. Because substantial evidence supports either determination, there is no error in the ALJ's conclusion that Plaintiff is 63 inches tall, and that, thus, Plaintiff's $FEV_1$ value did not satisfy the requirements of Listing 3.03(A).

---

*v. Mathews*, 544 F.2d 1345, 1354 (6th Cir. 1976) ("Medical evidence of a subsequent condition of health, reasonably proximate to a preceding time, may be used to establish the existence of the same condition at the preceding time."). Here, the ALJ noted that Plaintiff underwent pulmonary testing four months after the date she was last insured, but did not further elaborate with respect to how this fact affected his assessment of her impairment under the Listings.

13

See Ealy, 594 F.3d at 512.[5]

### 2. Plaintiff's Peak Flow Values and Her RFC

Plaintiff argues that the ALJ erred in failing to adequately evaluate the effect of Plaintiff's significantly reduced peak flow values on her RFC.  According to Plaintiff, in "failing to even acknowledge a possible effect of this evidence" on Plaintiff's RFC, the ALJ "was exercising medical expertise, which he does not possess."  (Plaintiff's Brief ("Pl. Br.") at 9.)  This argument lacks merit.  In August 2009, Dr. Krause examined Plaintiff and assessed, *inter alias*, Plaintiff's pulmonary function.  (Tr. 463-82.)  In his report of his examination, Dr. Krause assigned Plaintiff limitations on the basis of his conclusions.  (Tr. 465-70.)  In addition to acknowledging medical evidence of Plaintiff's pulmonary impairment, including her "significantly low peak flow measurements" (Tr. 14), the ALJ incorporated the vast majority of Dr. Krause's suggested limitations into Plaintiff's RFC (Tr. 19).  Plaintiff points to no evidence in the record requiring greater limitations than those included in the ALJ's calculation of her RFC.  Accordingly, substantial evidence supports the ALJ's determination of her RFC.[6]

---

[5] Plaintiff notes that, even if her height was rounded down to 160 centimeters, five out of the six $FEV_1$ values obtained during her pulmonary function tests fell below the required level of 1.15.  Although this is the case (Tr. 479), the Listings require that "[t]he reported . . . [$FEV_1$ level]. . . should represent *the largest of at least three* satisfactory forced expiratory maneuvers."  20 C.F.R. Part 404, Subpt. P, App. 1 at 3.00(E).  Here, 1.21 is the largest of the six trials conducted in August 2009.  (Tr. 479.)

[6] The Commissioner argues that evidence in the record that Plaintiff continued to smoke despite her pulmonary ailments undermines her credibility with respect to the severity of her breathing impairments.  The ALJ, however, did not address this issue in his decision, and this Court will not consider the Commissioner's argument on this point.  *See Berryhill v. Shalala*, 4 F.3d 993, *6 (6th Cir. Sept. 16, 1993) (unpublished opinion)

14

### 3. Dr. Wax

Finally, Plaintiff argues that the ALJ erred in failing to accept the opinion of Dr. Wax, the agency consulting psychologist who examined Plaintiff, and in giving greater weight to the opinions of non-examining agency consultants. The ALJ discussed Dr. Wax's conclusions in some detail throughout his decision. (Tr. 14-15, 17-18.) The only one of Dr. Wax's conclusions that the ALJ did not adopt was Dr. Wax's opinion that Plaintiff was markedly impaired in her ability to relate to others because of her depression:

> I have specifically considered Dr. Wax's opinion that [Plaintiff] had markedly impaired ability to relate with others because of her depression. He described [Plainitff] as isolated and staying to herself. His opinion and statement indicates that [Plaintiff] does not have a full or rich circle of social interactions with others. However, the evidence does not support a finding that [Plaintiff] is unable to relate to others appropriately. Moreover, Dr. Wax's clinical observations do not support a greater degree of limitation of this specific criterion . . . . In addition to relating well to him, he specifically noted that [Plaintiff] reported she was not suspicious and he did not observe paranoid ideation. At this time, [Plaintiff] stated she had no problems with anger or temper outbursts, and no aggressive behavior was noted. The record fails to show that [Plaintiff] has had major interactional difficulties with any of her treating sources or any of the doctors who have [had] an opportunity to examine her.

(Tr. 17-18.) Plaintiff acknowledges that the ALJ "gave *some* reason for refusing" to

---

("[T]he courts may not accept appellate counsel's *post hoc* rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.") (internal quotation marks omitted).

15

afford Dr. Wax's opinion great weight, but argues that, in providing his reasons, the ALJ "usurped the function and purpose of medical doctors in the disability process" by "decid[ing], himself, which specific exam findings are important or relevant." (Pl. Br. 11.)

Plaintiff's argument lacks merit.  In determining the weight to assign to a medical opinion, an ALJ considers the following factors: (1) whether the source has examined the claimant; (2) whether the source had a treatment relationship with the claimant and, if so, the length, nature and extent of that relationship and the frequency of examinations; (3) the extent to which the opinion is supported by, and consistent with, the medical record; (5) the medical specialty of the source; and (6) any other relevant factors asserted by the claimant.  20 C.F. R. § 404.1527(c).  Here, rather than usurping the role of Dr. Wax in Plaintiff's disability proceedings, the ALJ merely did what he was required to do by the regulations.  The ALJ considered the relevant factors required by the regulations.  He noted that Dr. Wax's opinion regarding Plaintiff's ability to interact with others was inconsistent with other evidence in the record – including Dr. Wax's own observations – and thus concluded that the record did not support Dr. Waxman's opinion on this issue.  The reasons identified by the ALJ are all evident in the record.  Further, he assessed the extent to which Dr. Wax's opinion was consistent with, and relevant to, the record.  Accordingly, substantial evidence supports the ALJ's decision not to accept Dr. Wax's opinion regarding Plaintiff's ability to relate to others.

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

                                      s/ *Nancy A. Vecchiarelli*

                                      U.S. Magistrate Judge

Date: June 28, 2013